1  MARK B. MIZRAHI (CA State Bar No. 179384)
     mmizrahi@wrslawyers.com
2  MAX N. WELLMAN (CA State Bar No. 291814)
     mwellman@wrslawyers.com
3  WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
   11400 W. Olympic Boulevard, 9th Floor
4  Los Angeles, California 90064-1582

5  Telephone:   (310) 478-4100
   Facsimile:   (310) 479-1422
6
   *Attorneys for Plaintiff,*
7  *Kellytoy Worldwide, Inc.*

8

9                 UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

11

12  KELLYTOY WORLDWIDE, INC., a          Case No.
    California corporation;
13                                       **COMPLAINT FOR:**
              Plaintiff,
14                                       **1.  FEDERAL TRADEMARK**
        vs.                              **INFRINGEMENT (15 U.S.C. § 1114(1)-**
15                                       **(2));**
    M. S. A. TRADING, INC., a California **2.  FEDERAL TRADEMARK**
16  corporation; CVS PHARMACY, INC.,     **INFRINGEMENT, FALSE**
    a Rhode Island corporation;          **DESIGNATION OF ORIGIN AND**
17  MICHAELS STORES, INC., a             **FALSE DESCRIPTION (15 U.S.C. §**
    Delaware corporation; and DOES 1     **1125);**
18  through 10, inclusive,               **3.  COMMON LAW TRADEMARK**
                                         **INFRINGEMENT;**
19            Defendants.                **4.  CALIFORNIA COMMON LAW**
                                         **UNFAIR COMPETITION;**
20                                       **5.  CALIFORNIA STATUTORY**
                                         **UNFAIR COMPETITION; AND**
21                                       **6.  CYBERPIRACY (15 U.S.C. §**
                                         **1125(d)).**
22
                                         **DEMAND FOR JURY TRIAL**
23

24

25

26

27

28

─────────────────────────────────────
                  COMPLAINT

1   Plaintiff KELLYTOY WORLDWIDE, INC., a California corporation
2   ("Kellytoy") bring this action against defendants M. S. A. TRADING, INC., a
3   California Corporation ("MSA"), CVS PHARMACY, INC., a Rhode Island
4   corporation ("CVS"), MICHAELS STORES, INC., a Delaware corporation
5   ("Michaels"), and DOES 1-10 (collectively, "Defendants") for injunctive relief and
6   damages under the laws of the United States and the State of California as follows:

7                        **JURISDICTION AND VENUE**

8       1.      This action arises under the trademark laws of the United States, 15
9   U.S.C. §§ 1114, 1125(a) and(d), and under the statutory and common law of
10  trademark infringement and unfair competition.

11      2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367,
12  and 15 U.S.C. §§ 1114, 1116, 1117, 1121, and 1125.

13      3.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391.

14      4.      This Court has personal jurisdiction over Defendants, as Defendants are
15  doing business in California and this District, including the acts complained of
16  herein, and are subject to the jurisdiction of this Court.  In fact, defendant MSA is a
17  California corporation with its principal place of business in this District.  In
18  addition, Defendants CVS and Michaels knowingly infringed on Kellytoy's
19  trademark rights, knowing that Kellytoy is a California resident, and thereby
20  purposefully directed their activities towards California.

21                        **NATURE OF THE ACTION**

22      5.      This is an action for trademark infringement, unfair competition and
23  false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a),
24  cyberpiracy under the Lanham Act, 15 U.S.C. § 1125(d), California Bus. & Prof.
25  Code § 17200, *et seq*., and the common law.

26      6.      Kellytoy's SQUISHMALLOW® branded plush toys
27  ("Squishmallows") – representative samples of which are depicted in **Exhibit 1**
28  hereto – are one of the world's hottest plush toy lines.  Kellytoy's Squishmallows

feature a highly distinctive and widely recognized trade dress, which Kellytoy pioneered and created.  Kellytoy markets its Squishmallows on social media, at tradeshows, through Squishmallows.com, amazon.com, Walmart.com, walgreens.com and target.com, and on Kellytoy's website, depicting images of its proprietary Squishmallows line of plush toys.

7.      Defendants are intellectual property pirates.  Now that Kellytoy's Squishmallows have exploded in popularity, Kellytoy discovered that Defendants have begun offering to sell and selling directly competitive products – plush toys that co-opt many of Kellytoy's Squishmallows' novel features – in connection with the designation MOOSHMALLOWZ – a trademark that infringes Kellytoy's registered SQUISHMALLOW trademark.  Defendant MSA is also using its confusingly similar trademark as the domain name for its website located at <mooshmallowz.com>.  Kellytoy sent letters to defendants MSA and CVS demanding that that they cease and desist from further selling the knock-off products, but to no avail.

8.      Accordingly, to prevent and remediate the rampant consumer confusion and misappropriation of Kellytoy's SQUISHMALLOW® trademark resulting from Defendants' unauthorized promotion and sale of the Infringing Plush (defined below), and to compensate Kellytoy for its injuries, Kellytoy seeks immediate and permanent injunctive relief, compensatory damages, disgorgement of Defendants' profits, statutory damages, punitive damages, Kellytoy's reasonable attorneys' fees and expenses, a product recall, and corrective advertising sufficient to address Defendants' wrongdoing.

## **THE PARTIES**

9.      Kellytoy Worldwide, Inc. is a California corporation with its principal place of business located in Vernon, California.

10.      On information belief, defendant M. S. A. Trading, Inc. ("MSA") is a California corporation with its principal place of business in Sherman Oaks,

California.

11.     On information belief, MSA is in the business of manufacturing abroad and importing into the United States, among other things, children's plush toys – modeled after Kellytoy's SQUISHMALLOWS® branded products – under the confusingly similar MOOSHMALLOWZ trademark (the "Infringing Plush").

12.     On information belief, defendant CVS Pharmacy, Inc. ("CVS") is a Rhode Island Corporation with its headquarters in Woonsocket, Rhode Island.

13.     CVS is in the business of owning and operating drug stores and pharmacies throughout the United States and, on information and belief, this District that sell various merchandise, including plush toys and, specifically, the Infringing Plush.

14.     On information belief, defendant Michaels Stores, Inc. ("Michaels") is a Delaware Corporation with its headquarters in Irving, Texas.

15.     Michaels is in the business of owning and operating arts and craft stores throughout the United States and, on information and belief, this District that sell various merchandise, including plush toys and, specifically, the Infringing Plush.

16.     The true names and capacities of defendants sued herein as DOES 1-10, inclusive, are unknown to Kellytoy, who therefore sues said defendants by such fictitious names.  Kellytoy will amend this Complaint to allege their true names and capacities when the same are ascertained.

17.     Upon information and belief, at all relevant times mentioned in this Complaint, Defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other and were acting within the scope and authority of that agency and with the knowledge, consent and permission of one another.

///

///

## BACKGROUND FACTS

### Kellytoy and Its Protected Intellectual Property Rights

18.     Kellytoy is engaged in the business of creating, manufacturing, distributing and selling unique plush toys, including, without limitation, its Squishmallows line of plush under the SQUISHMALLOW brand.  (*See, e.g.,* **Exhibit 1**.)

19.     Kellytoy has been in business for nearly 20 years and in that time has developed a reputation for producing high quality, unique, creative and innovative plush toys that are highly prized in the industry.

20.     Kellytoy exerts great efforts to promote and preserve its image identity and the image and identity of its high quality plush toys, including by creating distinctive designs and marks for use on its products and seeking U.S. trademark and copyright registrations for such designs and marks, including the SQUISHMALLOW trademark at issue in this Complaint.

21.     Indeed, Kellytoy is the sole and exclusive owner of United States Federal Trademark Registration No. 5454574 for the trademark SQUISHMALLOW for plush toys, also commonly referred to as "Squishmallows" (collectively, the "SQUISHMALLOW Trademark").  A true and correct copy of the Certificate of Registration for the SQUISHMALLOW Trademark No. 5454574 is attached as **Exhibit 2**.

22.     In 2016, Kellytoy conceived of and created its Squishmallows line of plush toy designs, marketed in connection with the inherently distinctive SQUISHMALLOW Trademark, that share common, unique features that distinguish them from the goods of others.  In essence, Kellytoy created an entirely new class of plush toys that has started a new craze, which has spawned numerous imitators, including Defendants.

23.     Kellytoy has been and is the sole owner of all right, title and interest in and to the SQUISHMALLOW Trademark.  From 2016 to the present, Kellytoy has

expended large sums of money in developing, advertising and promoting plush toys bearing the trademark through the United States.  In fact, Kellytoy is spending approximately $50,000 per month in direct to consumer and business-to-business advertising in connection with its SQUISHMALLOW branded goods.

24.     Kellytoy sells a broad range of Squishmallows that comprise, among other things, Japanese-inspired minimalist and whimsical facial features, a velvety velour-like-plush, Spandex exterior, and stuffed with a "Memory Foam" like polyester stuffing.  Many of these Squishmallow designs are the subject of Copyright Registrations issued by, and copyright applications currently pending before, the United States Copyright Office.

25.     Continuously and without interruption, beginning in 2016, Kellytoy has expended a great deal of time, effort, and money in the promotion of its Squishmallows.  Due to Kellytoy's unique design, extensive marketing efforts, media coverage, and market penetration, the SQUISHMALLOW Trademark has further acquired distinctiveness in the marketplace when applied to plush toys. Indeed, because of Kellytoy's extensive promotional activities and widespread display of its Squishmallows directed to the public, and a consequence of Kellytoy's fair and honorable dealings with its customers, the relevant consuming public has come to recognize and associate plush toys bearing the SQUISHMALLOW Trademark as high quality goods connected with or offered by Kellytoy.  The SQUISHMALLOW Trademark has valuable goodwill and consumer recognition associated with it and has come to symbolize the valuable goodwill and reputation of Kellytoy.

26.     In addition to being original and inherently distinctive, the SQUISHMALLOW Trademark is widely recognized by consumers.  A simple Internet search using the Google search engine yields 32,200 "hits" for the search term "Squishmallows."

27.     In addition to marketing and selling them through thousands of retail

stores nationwide, Kellytoy markets and sells its Squishmallows on its website <squishmallows.com> featuring dozens of copyright-protected photographs of its plush toys and models holding its Squishmallows. Copies of the homepage and other representative pages from <squishmallows.com> are attached as **Exhibit 3**.

28.     Further adding to the secondary meaning acquired by the SQUISHMALLOW Trademark in the marketplace, Squishmallows have been featured in numerous magazines, press articles, reviews, and videos, including many mainstream media outlets such as the *Washington Post*, the *Chicago Tribune*, the *Daily Harold*, O*kay! Magazine*, among others.  By way of example only, Squishmallows have been also recognized by The *Washington Post* and *Consumer Reports* on their 2017 Holiday Gift Guides; *LA Parent* recognized Squishmallows in its October 2017 issue, under the "Products We Love" section; and, as depicted below, *OK!* Magazine featured Squishmallows in its August 21, 2017 issue, stating "Cuddly as they are cute, they make great couch pals, pillows and bedtime buddies in any home.  Collect the whole squad!  squishmallows.com."



29.     Kellytoy's Squishmallows have also been featured in the October 2017 issues of *L.A. Parent Magazine*, *City Parent Magazine*, and *San Diego Family Magazine* and included in the 2017 gift guides for various publications, including in

1    *The Washington Post*, *The Houston Chronicle*, and *L.A. Parent*.

2        30.    Kellytoy's Squishmallows have also been the subject of numerous

3    industry awards and product recommendation lists, including by the National

4    Parenting Product Awards, Parents' Choice, and TTPM.  In fact, Kellytoy's

5    Squishmallows were named by *Toy Insider* as one of the "Top Holiday Toys," made

6    the cover the September/October 2017 *Toy Book Magazine*, and have been featured

7    in numerous other trade magazines, such as, *Teddy Bear and Friends Magazine* and

8    *Animal Tales Magazine*.

9        31.    Kellytoy's Squishmallows have also been the subject of extensive

10   marketing campaigns, including email campaigns, social media posts, and direct to

11   consumer advertising.  Kellytoy's Squishmallows currently have more than 13,300

12   Instagram followers, more than 19,000 Facebook followers – more than many

13   longer-existing and well-known plush brands. To its followers, Kellytoy regularly

14   publishes photographs of its Squishmallows. Many of these followers, in turn, share

15   these posts with their friends and social media followers. A copy of Squishmallows

16   Instagram page is attached as **Exhibit 4**.

17       32.    In addition, hundreds of well-known YouTube influencers and vloggers

18   have shared and posted images and videos of themselves holding plush toys in

19   Kellytoy's line of Squishmallows products. Tens of thousands of consumers have

20   done the same through numerous media platforms, including, Facebook, Instagram,

21   Pinterest and YouTube. These posts have generated millions of "likes" and "shares."

22       33.    Fans have been extremely engaged on social media, including

23   Facebook and Instagram, demonstrating their awareness and affection for Kellytoy's

24   Squishmallows and the SQUISHMALLOW brand, with the average Squishmallows

25   post likes on Instagram hovering over 1000+ per post and 45-100 average comments

26   per post.

27       34.    Kellytoy's Squishmallows website traffic has grown exponentially

28   since its launch in 2017 to an average of 4,313 visits per day.

35.     Kellytoy's Squishmallows are listed amongst the leading global brands and toys such as Hatchimals, Hasbro, RB, Hot Wheels, NERF, and Spin Master by several industry publications.

36.     As a direct result of Kellytoy's efforts at promoting and building its brand, Kellytoy's Squishmallows line of plush toys has exploded in popularity, creating substantial demand for and interest in Squishmallows, and generating enormous goodwill in the Squishmallows brand and wide recognition of the SQUISHMALLOWS Trademark in the United States and around the world.  In fact, Kellytoy's SQUISHMALLOW branded goods are sold through hundreds of retailers including some of the largest retailers in the country, including, approximately 1000 Costco stores, 5,500 Walmart stores, 8,500 Walgreens stores, 4,000 Kroger supermarkets and Fred Meyer stores, 2000 Target stores, 900 Party City stores, amongst other outfits such as Dave & Busters, Knotts Berry Farms and numerous others.

37.     Since the summer of 2017, Kellytoy has sold in excess of 4 million units of Squishmallows.  Kellytoy's Squishmallows products bearing the SQUISHMALLOW Trademark have yielded tens of millions of dollars of sales in the U.S. over the past year.

38.     In fact, Kellytoy's Squishmallows sold out through Walgreens.com during their Gift of the Week promotion in early November 2017, as well as exceeding all sales goals for the campaign, both online and in stores.

39.     Because of Squishmallows' massive success and popularity, consumers have come to associate Kellytoy's high-quality Squishmallows plush toys with the SQUISHMALLOW Trademark and, conversely, have come to recognize the SQUISHMALLOW Trademark as a designation of source.  At the same time, the success of Kellytoy's SQUISHMALLOW branded goods has attracted many imitators, such as Defendants, as discussed in greater detail below.

///

**Defendants' Unlawful Conduct**

40.     At the outset, none of the defendants to this action is licensed or otherwise authorized by Kellytoy to market or distribute products bearing Kellytoy's SQUISHMALLOW Trademark.

41.     Upon information and belief, since approximately March of 2018, notably well after Kellytoy's novel Squishmallows hit the marketplace and Kellytoy established its rights and reputation in its SQUISHMALLOW Trademark, Defendants have offered for sale and sold various plush toys – imitating the overall look and feel of Kellytoy's Squishmallows – bearing the MOOSHMALLOWZ trademark, a trademark that bears close similarity, in sight, sound, and meaning with the SQUISHMALLOW Trademark, through the <mooshmallowz.com> website and through retail stores.  Representative photographs of Defendants' Infringing Plush bearing the MOOSHMALLOWZ trademark are attached hereto as **Exhibit 5**.

42.     Defendants have caused the Infringing Plush to enter interstate commerce and/or to be transported or used in interstate commerce, and Kellytoy's SQUISHMALLOW branded plush and Defendants' Infringing Plush are sold in the same channels of trade.

43.     Rather than investing in creating its own designs and identity, Defendants elected to copy Kellytoy's plush toy concept and, in order to trade off of the goodwill established in the SQUISHMALLOW Trademark, adopted and uses the confusingly similar MOOSHMALLOWZ trademark in connection with the marketing and sale of the Infringing Plush.

44.     On April 12, 2018, Kellytoy observed CVS displaying the Infringing Plush for sale at one of its CVS stores.  One of the product labels on said plush identified MSA as the importer.  That same day, Kellytoy notified MSA that Kellytoy owns the rights in and to the SQUISHMALLOW Trademark, and requested that MSA stop offering for sale and selling the Infringing Plush.  On April 20, 2018, Kellytoy sent a similar letter directly to CVS.  As of the filing of this

1    Complaint, neither MSA nor CVS has provided a satisfactory response.

2         45.    On a number of occasions In 2017, Kellytoy pitched its

3    SQUISHMALLOW branded plush toys directly to defendant Michaels for resale by

4    Michaels at its stores.  Rather than purchase legitimate, noninfringing goods from

5    Kellytoy, Michaels elected instead to procure and resell the Infringing Plush bearing

6    the infringing MOOSHMALLOWZ trademark from MSA – well aware of

7    Kellytoy's prior and superior rights in the SQUISHMALLOW Trademark.  Indeed,

8    in late April 2018, Kellytoy observed the Infringing Plush being sold at one of

9    Michaels Los Angeles locations.

10        46.    Kellytoy is informed and believes that Defendants, without Kellytoy's

11   consent or permission, continue to sell, advertise, promote, display, and distribute,

12   toys bearing the confusingly similar MOOSHMALLOWZ trademark.

13        47.    The activities of Defendants in copying, distributing, advertising,

14   selling, offering for sale and otherwise using the MOOSHMALLOWZ trademark in

15   connection with the Infringing Plush for directly competitive goods constitutes false

16   designation of origin regarding sponsorship of those plush toys and falsely

17   represents to the public that the Infringing Plush originates from the same source as

18   those goods sold in connection with the SQUISHMALLOW Trademark, and/or that

19   the Infringing Plush have been sponsored, approved or licensed by Kellytoy, or are

20   in some way affiliated or connected with Kellytoy.  Such activities of Defendants

21   are likely to confuse, mislead, and deceive Defendants' customers, purchasers, and

22   members of the public as to the origin of the toys bearing the MOOSHMALLOWZ

23   trademark, or to cause such persons to believe that Defendants' Infringing Plush

24   and/or Defendants have been sponsored, approved, authorized, or licensed by

25   Kellytoy or in some way affiliated or connected with Kellytoy, all in violation of 15

26   U.S.C. §§ 1114 and 1125(a).

27        48.    On information and belief, MSA and/or its agents registered and/or

28   maintain the domain name <mooshmallowz.com>, and the content thereat including

the MOOSHMALLOWZ designation prominently displayed thereon in connection with the Infringing Plush, with knowledge of Kellytoy's exclusive rights in its SQUISHMALLOW Trademark, with the intent of deceiving and confusing the public into believing that the Infringing Plush are directly sponsored by, connected with, associated with, or originate from the same source as goods sold under the SQUISHMALLOW Trademark, with the intent of benefiting from Kellytoy's reputation and goodwill associated with this trademark, for the purpose of interfering with Kellytoy's conduct of its business and enjoyment of its exclusive rights under the SQUISHMALLOW Trademark, and for the purpose of interfering with efforts of Kellytoy to do lawful business on the Internet and elsewhere.

49.     Upon information and belief, the activities of Defendants were done willfully with full knowledge of the falsity of such designations of origin and false descriptions or representations, with the intent to trade on the enormous goodwill Kellytoy has earned in its SQUISHMALLOW Trademark, and with the intent to cause confusion, and to mislead and deceive the purchasing public into believing that the Infringing Plush are directly sponsored by, authorized, by, associated with, or originate from Kellytoy.

50.     Defendants, by their unauthorized copying and use of a trademark confusingly similar with Kellytoy's SQUISHMALLOW Trademark, have and are engaging in acts of trademark infringement, unfair competition, unlawful appropriation, unjust enrichment, wrongful deception of the purchasing public, and unlawful trading on Kellytoy's good will and garnered in its SQUISHMALLOW Trademark.  Defendants have damaged the reputation, business and good will of Kellytoy nationally and in this judicial district.

51.     Upon information and belief, Defendants are currently engaged in such infringing activities and unless enjoined by the Court will continue such infringing activities.

52.     Kellytoy has no adequate remedy at law.  Thus said activities of

Defendants have caused and, if not enjoined, will continue to cause irreparable, immediate and impending harm and damage to Kellytoy's business, and to the business, business reputation and good will of Kellytoy.

## **FIRST CAUSE OF ACTION**

### **(Federal Trademark Infringement – 15 U.S.C. § 1114(1)-(2))**

(Against All Defendants)

53.     Kellytoy repeats and realleges each of the allegations above as if fully set forth herein.

54.     Without Kellytoy's authorization or consent, and having knowledge of Kellytoy's prior rights in the SQUISHMALLOW Trademark, Defendants have designed, manufactured, distributed, advertised, offered for sale and sold highly similar plush toys bearing the highly similar trademark, MOOSHMALLOWZ, to the consuming public in direct competition with Kellytoy, in or affecting interstate commerce.

55.     Defendants have caused a likelihood of confusion, mistake and deception as to the source of origin, sponsorship, authorization, association, or affiliation of Defendants' goods, such that there is a likelihood that the public will be confused into believing that the products Defendants promote, distribute, and sell are directly sponsored by, associated with, or originate from the same source as Kellytoy's plush toys sold in connection with the SQUISHMALLOW Trademark.

56.     Defendants' use of the SQUISHMALLOW Trademark violates section 32(1) and (2) of the Lanham Act, 15 U.S.C. § 1114(1)-(2), because it constitutes unauthorized, willful and/or deliberate use in commerce of reproductions, counterfeits, copies, and/or colorable imitations of Kellytoy's federally-registered mark in connection with the sale, offering for sale, distribution, and advertising of products and services in a manner likely to cause confusion, mistake, and deception.

57.     On information and belief, Defendants' acts have been willful and deliberate.

58.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Kellytoy's rights in the SQUISHMALLOW Trademark, as well as the goodwill associated therewith, and have diverted sales and profits from Kellytoy to Defendants.  Thus, as a direct and proximate result of Defendants' acts of willful infringement, Kellytoy has suffered damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Kellytoy's lost profits.

59.     Defendants' actions described above have caused and will continue to cause irreparable damage to Kellytoy, unless Defendants are restrained by this Court.  Kellytoy has no adequate remedy at law with regard to Defendants' infringing conduct.  Accordingly, Kellytoy is entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using Kellytoy's SQUISHMALLOW Trademark, or any colorable imitation or variation thereof, including MOOSHMALLOWZ, in connection with the sale and/or marketing of any products.

60.     Defendants' aforesaid acts are exceptional within the meaning of 15 U.S.C § 1117.

## SECOND CAUSE OF ACTION

**(Trademark Infringement, False Designation of Origin and False Description – 15 U.S.C. §1125)**

(Against All Defendants)

61.     Kellytoy repeats and re-alleges each and every allegation of paragraphs 1 through 49 as though fully set forth herein.

62.     The SQUISHMALLOW Trademark is non-functional and highly distinctive, and has become associated in the public mind with plush toy products of the highest quality and reputation finding their source in Kellytoy.

63.     Kellytoy owns all right, title and interest in and to the SQUISHMALLOW Trademark.

64.     Without Kellytoy's authorization or consent, and having knowledge of Kellytoy's prior rights in the SQUISHMALLOW Trademark, Defendants have designed, manufactured, distributed, advertised, offered for sale and sold highly similar plush toys bearing the highly similar trademark, MOOSHMALLOWZ, to the consuming public in direct competition with Kellytoy, in or affecting interstate commerce.

65.     Defendants have caused a likelihood of confusion, mistake and deception as to the source of origin, sponsorship, authorization, association, or affiliation of Defendants' goods, such that there is a likelihood that the public will be confused into believing that the products Defendants promote, distribute, and sell are directly sponsored by, associated with, or originate from the same source as Kellytoy's plush toys sold in connection with the SQUISHMALLOW Trademark.

66.     Defendants' acts described above constitute trade mark infringement, false designation of origin, false description, and false representation in violation of 15 U.S.C. §1125(a).  Such activities are harming Kellytoy's ability to protect the integrity of its products and the goodwill of its valuable SQUISHMALLOW Trademark.

67.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Kellytoy's rights in the SQUISHMALLOW Trademark, as well as the goodwill associated therewith, and have diverted sales and profits from Kellytoy to Defendants.  Thus, as a direct and proximate result of Defendants' acts of willful infringement, Kellytoy has suffered damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Kellytoy's lost profits.

68.     Defendants' actions described above have caused and will continue to cause irreparable damage to Kellytoy, unless Defendants are restrained by this

Court.  Kellytoy has no adequate remedy at law with regard to Defendants'
infringing conduct.  Accordingly, Kellytoy is entitled to a preliminary and
permanent injunction, pursuant to 15 U.S.C. § 1116, restraining and enjoining
Defendants' and their agents, servants, and employees, and all persons acting
thereunder, in concert with, or on their behalf, from using Kellytoy's
SQUISHMALLOW Trademark, or any colorable imitation or variation thereof,
including MOOSHMALLOWZ, in connection with the sale and/or marketing of any
products.

69.     Defendants' aforesaid acts are exceptional within the meaning of 15
U.S.C § 1117.

### THIRD CAUSE OF ACTION

### (Common Law Trademark Infringement)

(Against all Defendants)

70.     Kellytoy repeats and re-alleges each and every allegation of paragraphs
1 through 52 as though fully set forth herein.

71.     Defendants have violated Kellytoy's exclusive common law rights in
the SQUISHMALLOW Trademark.

72.     Kellytoy has continuously used its SQUISHMALLOW Trademark to
identify its goods in California and elsewhere, and to distinguish them from goods
of a different origin.  As such, Kellytoy has common law rights to the
SQUISHMALLOW Trademark.

73.     Defendants' acts described above constitute trade mark infringement
under the common laws of the United States, including California.

74.     As a direct and proximate result, Kellytoy has suffered injury and harm
and will continue to suffer such harm, including money damages, the amount of
which Kellytoy will prove at trial.

75.     Kellytoy has no adequate remedy at law.  Thus said activities of
Defendants have caused, if not enjoined, will continue to cause irreparable harm and

damage to the rights of Kellytoy in its SQUISHMALLOW Trademark and to its business reputation and good will.

76. Upon information and belief, Defendants have engaged in their unlawful conduct alleged herein intentionally, maliciously, fraudulently and oppressively entitling Kellytoy to punitive damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**(California Common Law Unfair Competition)**

(Against all Defendants)

77. Kellytoy repeats and re-alleges each and every allegation of paragraphs 1 through 52 as though fully set forth herein.

78. This claim arises under the common law of the State of California relating to unfair competition.

79. Defendants' use of the MOOSHMALLOWZ trademark in connection with the Infringing Plush constitute reproductions, copies and colorable imitations of Kellytoy's SQUISHMALLOW Trademark and constitutes unfair competition, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the parties' products and to cause purchasers to believe Defendants' products are authentic products of Kellytoy when in fact they are not.

80. Upon information and belief, Defendants have intentionally appropriated Kellytoy's SQUISHMALLOW Trademark with the intent of causing confusion, mistake, and deception as to the source of their goods and with the intent of palming off their goods as those of Kellytoy and to place others in the position to palm off their goods as those of Kellytoy.

81. By their actions in infringing Kellytoy's SQUISHMALLOW Trademark, Defendants are improperly trading upon the reputation and good will of Kellytoy and are impairing Kellytoy's valuable rights in its SQUISHMALLOW

Trademark.

82. Defendants' unauthorized activities as alleged herein constitute unfair competition, and are likely to illegitimately harm Kellytoy's competitive position in the marketplace.

83. As a direct and proximate result, Kellytoy has suffered injury and harm and will continue to suffer such harm, including money damages, the amount of which Kellytoy will prove at trial.

84. Kellytoy has no adequate remedy at law. Thus said activities of Defendants have caused, if not enjoined, will continue to cause irreparable harm and damage to the rights of Kellytoy in its SQUISHMALLOW Trademark and to its business reputation and good will.

85. Upon information and belief, Defendants have engaged in their unlawful conduct alleged herein intentionally, maliciously, fraudulently and oppressively entitling Kellytoy to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (California Statutory Unfair Competition –
### California Bus. & Prof. Code § 17200, *et seq*.)

(Against all Defendants)

86. Kellytoy repeats and re-alleges each and every allegation of paragraphs 1 through 53, 63, 68 through 70, 75 through 79, and 78 through 81 as though fully set forth herein.

87. By reason of the foregoing, Defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of California Business and Professional Code §17200 *et seq*.

88. Said activities of Defendants have caused, if not enjoined, and will continue to cause irreparable harm and damage to the rights of Kellytoy in its SQUISHMALLOW Trademark and to its business reputation and good will.

Kellytoy has no adequate remedy at law for these wrongs and injuries.  The damage to Kellytoy includes harm to its goodwill and reputation in the marketplace that money alone cannot compensate.  Accordingly, Kellytoy is entitled to a preliminary and permanent injunction restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using Kellytoy's SQUISHMALLOW Trademark, or any colorable imitation or variation thereof, in connection with the sale and/or marketing of any products.  Kellytoy is further entitled to recover its costs and attorneys' fees incurred in bringing and prosecuting this action.

## **SIXTH CAUSE OF ACTION**

### **(Cyberpiracy under 15 U.S.C. § 1125(d))**

(Against MSA and the Doe Defendants)

89.    Kellytoy repeats and re-alleges each and every allegation of paragraphs 1 through 55 as though fully set forth herein.

90.    Kellytoy's SQUISHMALLOW Trademark mark is and was a distinctive mark at the time the Defendants registered and began controlling the domain name <mooshmallowz.com>.

91.    The domain name <mooshmallowz.com> is confusingly similar to Kellytoy's SQUISHMALLOW Trademark, especially in light of the high similarity of the parties' respective goods.

92.    On information and believe, Defendants chose the domain name <mooshmallowz.com> with a bad faith intent to profit from Kellytoy's reputation in its SQUISHMALLOW Trademark.

93.    Defendants' use and registration of the domain name <mooshmallowz.com> violates 15 U.S.C. § 1125(d).

94.    Defendants' conduct is causing irreparable damage to Kellytoy for which there is no adequate remedy at law, such that the Court should order the forfeiture or cancellation of the domain name or the transfer thereof to Kellytoy.

95.    As a direct and proximate result of Defendant's conduct, Kellytoy has suffered damages to the valuable SQUISHMALLOW Trademark, such that the Court should award statutory damages in the amount of not less than $100,000, as provided for under 15 U.S.C. § 1117(d).

## **PRAYER FOR RELIEF**

WHEREFORE, Kellytoy prays for judgment against Defendants as follows:

1.    That Defendants, their officers, members, shareholders, directors, agents, servants, employees, successors, licensees, representatives, successors, assigns, and all persons acting in concert or participation with them, be permanently enjoined and restrained from:

(i) Manufacturing, importing, distributing, advertising, offering to sell or selling the Infringing Plush or any goods bearing the SQUISHMALLOW Trademark, or any confusingly similar designations, including without limitation MOOSHMALLOWZ;

(ii) Using the SQUISHMALLOW Trademark or any confusingly similar designation, including without limitation MOOSHMALLOWZ, in connection with the importation, distribution, sale, offer for sale, or promotion of any goods, including toys;

(iii) Using any false designation of origin, or representing or suggesting directly or by implication that Defendants, or any brands created by Defendants, or their toys, are affiliated with, associated with, authorized by, or otherwise connected to Kellytoy or the SQUISHMALLOW brand, or that Defendants are authorized by Kellytoy to use the SQUISHMALLOW Trademark;

(iv) Engaging in any other activity constituting unfair competition

with Kellytoy, or constituting infringement of the SQUISHMALLOW Trademark;

(v) from using, or transferring to any entity other than Kellytoy, or encumbering, or maintaining ownership of the domain name <mooshmallowz.com>, or undertaking any activities to promote or utilize that domain name, or any other domain name that includes any word or designation confusingly similar to SQUISHMALLOWS, including without limitation, MOOSHMALLOWZ, or any alternate spellings thereof;

(vi) from infringing or contributing to the infringement of any of Kellytoy's trademarks or trade names, including without limitation SQUISHMALLOW Trademark, or otherwise engaging in unfair competition with Kellytoy in any manner or engaging in any conduct tending to falsely represent or likely to confuse, mislead or deceive suppliers, purchasers, or any member of the public into thinking that Defendants or any of their products are affiliated with Kellytoy or that Kellytoy has otherwise sponsored, approved, or licensed any products or services of Defendants; and

(vii) Assisting, inducing, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (vi) above, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vi) above;

2.      That Defendants be directed to file with the Court and serve on Kellytoy, within thirty (30) days after entry of a final injunction, a report in writing

1  under oath setting forth in detail the manner and form in which Defendants have

2  complied with the injunction;

3      3.    That Kellytoy has superior rights to exclusive use in the

4  SQUISHMALLOW Trademark in connection with toys;

5      4.    That Defendants shall not in the future file or maintain an application

6  for registration or registration of any mark that includes "squishmallows" or

7  "mooshmallowz," or either the word "squish" or "mallows" or any designation(s)

8  confusingly similar thereto with the United States Patent and Trademark Office or

9  any other governmental or state authority;

10      5.    That the Court direct any third parties providing services to

11  Defendants in connection with any infringing and/or enjoined conduct, including

12  social media platforms (*e.g.*, Instagram, Facebook, Twitter), online marketplaces

13  (*e.g.*, Alibaba, eBay, Etsy, AliExpress, Amazon, Taobao), online payment

14  providers, including credit card companies (*e.g.*, PayPal, Visa) and other service

15  providers (*e.g.*, Google, GoDaddy, LiveChat, Shopify) to cease providing services

16  to Defendants in connection with the offer for sale and sale of the Infringing Plush

17  or any other products using or embodying the SQUISHMALLOW Trademark, or

18  any word or designation confusingly similar to the SQUISHMALLOW Trademark,

19  including without limitation, MOOSHMALLOWZ, or any alternate spellings

20  thereof;

21      6.    That the Court enter an order requiring Defendants to either cancel their

22  registration, or transfer the ownership of such registration to Kellytoy, of the domain

23  name <mooshmallowz.com>, or any other domain name that includes the term

24  "mooshmallowz," or any word or designation confusingly similar to

25  SQUISHMALLOWS, including without limitation, alternate spellings.

26      7.    That Defendants have no right or authority to issue, grant, register,

27  license, or otherwise authorize the use of <mooshmallowz> as an Internet domain

28  name, and no right to use, copy, reproduce, or display Kellytoy's

SQUISHMALLOW Trademark, or confusingly similar marks, including, without limitation, MOOSHMALLOWZ, on the Internet in connection with selling, advertising, or promoting any products/services without Kellytoy's consent;

8. Adjudge that each of the Defendants, by its unauthorized use of the MOOSHMALLOWZ designation in connection with plush toys, and such other acts as it may have undertaken relating to that designation, have violated Kellytoy's rights under 15 U.S.C. §§ 1114, 1125(a) and 1125 (d), under California state law (including, without limitation, Cal. Bus. & Prof. Code § 17200 *et seq.*), under common law, and that they have done so willfully and for the purpose of violating Kellytoy's rights and damaging Kellytoy's goodwill and reputation in the SQUISHMALLOW Trademark;

9. Direct Defendants to provide Kellytoy with an identification in writing of any and all entities that are presently using the MOOSHMALLOWZ designation in the United States on Defendants' behalf and inform them that they must immediately cease such use;

10. Direct Defendants to immediately recall any and all merchandise previously provided to any United States entity bearing or in connection with the MOOSHMALLOWZ designation;

11. Enter an order, including pursuant to 15 U.S.C § 1118, directing Defendants to deliver for destruction all products, brochures, marketing materials, decals, stickers, signs, prints, packages, receptacles, wrappers, boxes, and advertisements in their possession or under their control, bearing any unauthorized copy of any of the SQUISHMALLOW Trademark, or any simulation, reproduction, counterfeit, copy, confusingly similar likeness, or colorable imitation thereof, including without limitation the MOOSHMALLOWZ designation, and all plates, molds, matrices, programs and other means of making same;

12. That each Defendant provide Kellytoy in writing with the following information relating to Defendants' goods marketed, advertised, offered for sale, or

sold under the MOOSHMALLOWZ designation:

(i) the name, address and telephone number of each and every United States entity to whom Defendants have made available or otherwise provided any such products;

(ii) the total number of units distributed and sold;

(ii) the total number of units remaining in inventory; and

(iii) a full accounting as to the precise dollar amount of such products made available or provided and the profits recognized by Defendants in connection with such actions;

13. That Defendants be required to pay Kellytoy such damages as it has sustained as a consequence of Defendants' infringement of the of the SQUISHMALLOW Trademark and trebling of those damages under 15 U.S.C. § 1117;

14. That Kellytoy be awarded statutory damages in the amount of not less than $100,000, under 15 U.S.C. § 1117(d);

15. Direct Defendants to pay the costs of corrective advertising;

16. Direct Defendants to pay Kellytoy's attorneys' fees and costs incurred in initiating and prosecuting this action;

17. Direct Defendants to pay punitive damages and exemplary damages according to proof;

18. That Kellytoy recover its actual damages, Kellytoy's lost profits, and Defendant's profits arising from Defendants' conduct complained-of herein;

19. That the Court award enhanced profits and treble damages;

20. That Kellytoy be awarded interest, including pre-judgment interest, on the foregoing sums;

21. That the Court direct such other actions as the Court may deem just and proper to prevent the public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendants

1    are authorized by Kellytoy or related in any way to Kellytoy's products or services;

2    and

3           22.    For such other and further relief as the Court may deem just and

4    proper.

5                                      Respectfully submitted,

6    Dated:  May 2, 2018              WOLF, RIFKIN, SHAPIRO,
                                      SCHULMAN & RABKIN, LLP
7

8

9                                     By:  ____/s/ Mark B. Mizrahi_____
10                                         MARK B. MIZRAHI
                                           MAX N. WELLMAN
11                                    Attorneys for Plaintiff,
12                                    KELLYTOY WORLDWIDE, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2           Plaintiff hereby demand and request a trial by jury of all issues raised that are

3  triable by jury.

4                                        Respectfully submitted,

5

6  Dated:  May 2, 2018                    WOLF, RIFKIN, SHAPIRO,
                                          SCHULMAN & RABKIN, LLP
7

8

9                                         By:  _____/s/ Mark B. Mizrahi_____
10                                             MARK B. MIZRAHI
                                               MAX N. WELLMAN
11                                        Attorneys for Plaintiff,
12                                        KELLYTOY WORLDWIDE, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28